IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JESSICA JOHNSON,

                    Plaintiff,

vs.                                        Case No. 12-2147-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.   The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On August 23, 2010, administrative law judge (ALJ) Christine A. Cooke issued her decision (R. at 9-16). Plaintiff alleges that she has been disabled since August 16, 2008 (R. at 9). Plaintiff is insured for disability insurance benefits through March 31, 2012 (R. at 11). At step one, the ALJ found

that plaintiff has not engaged in substantial gainful activity
since plaintiff's alleged onset date (R. at 11).  At step two,
the ALJ found that plaintiff had the following severe
impairments: obesity and asthma (R. at 11).  At step three, the
ALJ determined that plaintiff's impairments do not meet or equal
a listed impairment (R. at 13).  After determining plaintiff's
RFC (R. at 13), the ALJ determined at step four that plaintiff
is unable to perform any past relevant work (R. at 15).  At step
five, the ALJ determined that plaintiff could perform other jobs
that exist in significant numbers in the national economy (R. at
15-16).  Therefore, the ALJ concluded that plaintiff was not
disabled (R. at 16).

**III.  Did the ALJ err in her consideration of the opinions of
Dr. Fitzgibbon, plaintiff's treating physician?**

Dr. Fitzgibbon prepared a physical RFC questionnaire on May
9, 2010 (R. at 550-554).  She indicated that she had treated
plaintiff for approximately 4 months (R. at 550).  She opined
that standing and walking would be very difficult for the
plaintiff, and that her pain and other symptoms would frequently
interfere with attention and concentration needed to perform
even simple work tasks (R. at 551).  Dr. Fitzgibbon indicated
that plaintiff could sit for more than 2 hours at one time and
for 6 hours in an 8 hour workday, and could stand/walk for only
5 minutes at a time and for less than 2 hours in an 8 hour

5

workday (R. at 551-552).  Dr. Fitzgibbon further indicated that

plaintiff would require unscheduled breaks while working (R. at

552); in addition, plaintiff can never twist, stoop (bend),

crouch/squat, or climb ladders or stairs (R. at 553).  She

opined that plaintiff can reach overhead less than 10% of the

time, and would miss work about 2 days per month because of her

impairments or treatment (R. at 553).

   The ALJ discussed the report of Dr. Fitzgibbon as follows:

>    …This assessment is generally consistent
>    with claimant's ability to perform limited
>    sedentary work but there are opinions
>    including symptoms, which would cause
>    frequent concentration deficits and require
>    daily unscheduled breaks, which, if
>    credible, would be consistent with the
>    finding of disabled.
>
>    However, this physician had only treated
>    claimant for a total of four months in 2010.
>    When compared to the record longitudinally
>    during the timeframe relevant to this appeal
>    beginning with an onset date of August 16,
>    2008, these opinions are not persuasive.
>    Claimant underwent a physical evaluation in
>    September 2007 and at that time, her motor
>    function, sensation and reflexes were all
>    within normal limits.  She had full range of
>    motion.  She had severe problems performing
>    orthopedic maneuvers but there was no
>    evidence of any pulmonary impairment and
>    accessory breathing muscles were not used.
>    This evidence is found in Exhibit 17F.

(R. at 14).  The ALJ then made the following RFC findings:

>    …the undersigned finds that claimant has the
>    residual functional capacity to sit for 6
>    out of 8 hours; and can stand or walk for 2
>    out of 8 hours for no more than 5 minutes at

a time.  She can lift or carry a maximum of
10 pounds occasionally and frequently.
Claimant is able to stoop occasionally.  She
can never climb ladders, ropes, scaffolding,
stairs or ramps; balance; kneel; crouch; or
crawl.  Claimant should avoid temperature
extremes of heat or cold, wetness, humidity,
fumes, odors, dust, and airborne
particulates.  She cannot work around
hazards, such as dangerous machinery or
unprotected heights.  Claimant cannot drive.

(R. at 13).

The only medical opinion in the case record regarding

plaintiff's physical RFC which was discussed by the ALJ in her

decision is the above report by Dr. Fitzgibbon.  The ALJ's RFC

findings incorporate some of the limitations set forth by Dr.

Fitzgibbon, including her opinion that plaintiff cannot stand or

walk for more than 5 minutes at a time.  However, the ALJ failed

to include in his RFC findings the opinions of Dr. Fitzgibbon

that plaintiff could stand/walk for less than 2 hours in an 8

hour workday, and would need to miss about 2 days a month

because of her impairments or treatment.  The vocational expert

(VE) testified that such limitations would preclude employment

(R. at 48).  However, the ALJ offered no explanation for not

including these limitations.  The ALJ did not cite to any

medical opinion or other evidence which disputed or contradicted

these opinions by Dr. Fitzgibbon.  When discussing the opinions

of Dr. Fitzgibbon, the ALJ referenced (R. at 14) a consultative

examination by Dr. Duncan on September 8, 2007 (R. at 462-466),

and a consultative examination by Dr. Greiner on November 22, 2008 (R. at 379-382). However, neither Dr. Duncan or Dr. Greiner offered any opinions regarding plaintiff's physical RFC, and therefore did not dispute or contradict any of the opinions of Dr. Fitzgibbon which were not included in the ALJ's RFC findings.[1]

An ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability. Chapo v. Astrue, 682 F.3d 1285, 1292 (10th Cir. 2012); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). As the court stated in Chapo, the ALJ provided no explanation at all as to why one part of the medical source opinion was creditable and the rest was not; this was found to be error under this circuit's case law. 366 F.3d at 1292. This is the very situation in the case now before the court.

A treating physician opinion can be rejected outright only on the basis of contradictory medical evidence and not due to an ALJ's own credibility judgments, speculation or lay opinion. Robinson, 366 F.3d at 1082; McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). However, the ALJ failed to cite to any medical evidence that contradicted the opinions of Dr.

_____

[1] In fact, Dr. Duncan specifically found that plaintiff had severe difficulty with heel and toe walking, and severe difficulty arising from the sitting position (R. at 464), while Dr. Greiner opined that plaintiff had moderate difficulty with heel and toe walking (R. at 381). Such opinions do not contradict or dispute the opinion of Dr. Fitzgibbon that plaintiff can only stand/walk for less than 2 hours in an 8 hour workday.

Fitzgibbon which were not included in the ALJ's RFC findings.
In fact, the ALJ failed to cite to any other medical evidence in
the record, other than Dr. Fitzgibbon, which addresses
plaintiff's RFC.   Therefore, this case shall be remanded in
order for the ALJ to provide a legally sufficient explanation
for rejecting some of the limitations contained in the report of
Dr. Fitzgibbon.

The ALJ did state that recommendations for exercise are
inconsistent with disability (R. at 14).   That recommendation
was made by Dr. Fitzgibbon (R. at 536).   However, the ALJ did
not cite to any medical or other evidence, or to any regulation
or ruling in support of this assertion.   An ALJ is not entitled
to *sua sponte* render a medical judgment without some type of
support for this determination.   The ALJ's duty is to weigh
conflicting evidence and make disability determinations; he is
not in a position to render a medical judgment.   Dannels v.
Astrue, Case No. 10-1416-SAC (D. Kan. Dec. 20, 2011; Doc. 19 at
10); Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan.
2002).   Furthermore, the adjudicator is not free to substitute
his own medical opinion for that of a disability claimant's
treatment providers.   Hamlin v. Barnhart, 365 F.3d 1208, 1221
(10th Cir. 2004).   There is absolutely no basis in the evidence
to support the ALJ's assertion that a recommendation for
exercise is inconsistent with disability or with the limitations

set forth by Dr. Fitzgibbon which were not included in the ALJ's RFC findings.

## IV.  Did the ALJ err at step two?

Plaintiff argues that the ALJ erred by failing to list plaintiff's depression, psoriasis, and hypertension as severe impairments.  The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.  Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the

impairment would have on his or her ability to work.   Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).   A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.   20 C.F.R. § 404.1512(c), § 416.912(c).

In his report, Dr. Fitzgibbon stated that plaintiff's pain and other symptoms were severe enough to frequently interfere with attention and concentration to perform even simple work tasks (R. at 551).   In light of the failure of the ALJ to properly evaluate the report of Dr. Fitzgibbon, on remand, the ALJ shall make new findings at step two after giving proper consideration to the opinions of Dr. Fitzgibbon on this issue.

In finding at step two that plaintiff had no severe mental impairment, the ALJ relied on a psychiatric review technique form prepared by Dr. Jessop on September 6, 2007 (R. at 12, 448-460).   This report predates plaintiff's alleged onset date of August 16, 2008.   However, the ALJ failed to mention a psychiatric review technique form and mental RFC assessment prepared on December 9, 2008 by Dr. Schulman (R. at 361-373, 375-377).   Dr. Schulman found that that plaintiff had a severe mental impairment, and also found moderate limitations in the ability to understand, remember and carry out detailed instructions (R. at 361, 375).   Those reports should be

considered by the ALJ when the case is remanded.[2]

On the other two impairments, they were not specifically addressed at step two by the ALJ.  Therefore, because this case is being remanded, the ALJ shall address these impairments at step two.  However, the court would note that plaintiff has failed to cite to any evidence that either of these two impairments interfere with or have a serious impact on the claimant's ability to do basic work activities.

**V.  Did the ALJ err by failing to develop the medical record in regards to plaintiff's mental impairment?**

Consultative medical examinations may be ordered by the ALJ when the information needed is not readily available from medical treatment sources.  20 C.F.R. §§ 404.1512(f), 404.1519a(a)(1).  The Commissioner has broad latitude in ordering consultative examinations.  Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim.  Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary.  There must be present some objective evidence in the record suggesting the

---

[2] The court would note that the VE testified that even with these limitations, plaintiff would still be able to perform the jobs previously identified by the VE (R. at 47).

existence of a condition which could have a material impact on the disability decision requiring further investigation.  The claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.  When the claimant has satisfied this burden in that regard, it then becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.  In a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.  In the absence of such a request by counsel, the court will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record. The ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.  Hawkins v. Chater, 113 F.3d 1162, 1166-1168, 1169 (10th Cir. 1997; see Madrid v. Barnhart, 447 F.3d 788, 791-792 (10th Cir. 2006)(where additional tests are required to explain a diagnosis already in the record, resort to a consultative examination may be necessary).

Medical opinion evidence regarding plaintiff's mental impairments and limitations include a psychiatric review

technique form prepared on September 6, 2007 (R. at 448-460), a
psychological evaluation prepared on November 18, 2008 (R. at
386-389), and a psychiatric review technique form and mental RFC
assessment prepared on December 9, 2008 (R. at 361-373, 375-
377).  Finally the record includes Dr. Fitzgibbon's RFC
questionnaire dated May 9, 2010, which discussed plaintiff's
limitations in regards to attention and concentration (R. at
551).

In light of the broad latitude accorded to an ALJ in
ordering a consultative examination, the court finds no clear
error by the ALJ in not ordering a consultative examination,
especially in light of the amount of medical opinion evidence
already in the record regarding plaintiff's mental impairments
and limitations.  However, because this case is being remanded
for other reasons, on remand the ALJ should consider whether a
further consultative examination would be warranted after
considering the evidence already in the record.

**VI.  Did the ALJ err in giving weight to plaintiff's
noncompliance with treatment?**

In her decision, the ALJ stated the following:

> Further, the record shows that claimant has
> been noncompliant with treatment in as much
> as she failed to keep numerous scheduled
> appointments.  She has not provided any
> valid excuse for her non-compliance with
> scheduled treatment, which is prohibited in
> the regulations at 20 CFR § 404.1530.  She

> complains of severe pain, but she is not
> taking any prescriptive pain medications.

(R. at 15).  Defendant discussed this argument by the ALJ in his

brief (Doc. 14 at 6).

At the hearing, plaintiff testified as follows:

> Q (by ALJ): It looks to me like the last
> mental health treatment you had was perhaps
> in 2008?  Is that correct?
>
> A (by plaintiff): Yes. I stopped seeing my
> psychiatrist after I lost my job.  Because I
> lost my insurance.

While failure to seek treatment may be probative of severity,

the ALJ has a basic duty of inquiry to ask the plaintiff why

he/she did not seek treatment, or why it was sporadic.

Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept.

17, 2003).  Similarly, SSR 96-7p states the following:

> On the other hand, the individual's
> statements may be less credible if the level
> or frequency of treatment is inconsistent
> with the level of complaints, or if the
> medical reports or records show that the
> individual is not following the treatment as
> prescribed and there are no good reasons for
> this failure. However, the adjudicator must
> not draw any inferences about an
> individual's symptoms and their functional
> effects from a failure to seek or pursue
> regular medical treatment without first
> considering any explanations that the
> individual may provide, or other information
> in the case record, that may explain
> infrequent or irregular medical visits or
> failure to seek medical treatment. The
> adjudicator may need to recontact the
> individual or question the individual at the
> administrative proceeding in order to

> determine whether there are good reasons the
> individual does not seek medical treatment
> or does not pursue treatment in a consistent
> manner. The explanations provided by the
> individual may provide insight into the
> individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); cited with approval in Madron v. Astrue, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009).  The fact than an individual may be unable to afford treatment and may not have access to free or low-cost medical service is a legitimate excuse.  Madron, 311 Fed. Appx. at 178; SSR 96-7p, 1995 WL 374186 at *8.

In her decision, the ALJ never mentioned plaintiff's testimony that she had stopped mental health treatment because she lost her insurance.  Therefore, on remand, the ALJ shall comply with SSR 96-7p and consider any explanations plaintiff may provide for a lack of treatment.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 13th day of February, 2013, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge